### ERWIN v. ST. JOSEPH BOARD OF PUBLIC SCHOOLS.

### OSBORNE v. SAME.

*(Circuit Court, W D. Missouri, E. D.   November, 1880.)*

PUBLIC SCHOOL BOARD—AUTHORITY OF—NOT TO ISSUE BONDS.
>   The boundary to the discretion of the board of public schools of St. Joseph as to the building of school-houses is fixed by the charter of the corporation, and their authority is limited and defined in the fourteenth section of the act of incorporation, which does not authorize the board to create a debt for that purpose and issue bonds for the payment thereof.

The facts appear in the opinion.
*Woodson & Crosby*, for plaintiff.
*Flanagan*, for defendant.

KREKEL, D. J.   These suits are instituted on detached coupons of the same issue of bonds emitted by the St. Joseph Board of Public Schools.

The question to be determined is, had the board authority to issue them? The bonds declared on are in the following form:

"No. ——.                    UNITED STATES OF AMERICA.                    $1,000.

"State of Missouri, City of St. Joseph.

"The St. Joseph Board of Public Schools of the city of St. Joseph, in the county of Buchanan, in the state of Missouri, being legally organized and

assembled, do hereby acknowledge themselves indebted to ―― ――, or order, in the sum of $1,000, which said sum they bind themselves, and their successors in office, to pay the said ―― ――, or order, on or before the first day of April, 1888, at the National Bank of Commerce, in the city of New York, and interest thereon from April 1, 1868, at the rate of 10 per centum per annum, payable half yearly on the first days of April and October, on presentation of the proper coupons hereto annexed; reserving to themselves and their successors in office the right of paying this bond, with the interest thereon, at any time after the expiration of 10 years from the date hereof. This bond is secured by the real and personal estate owned and held by the said board of public schools in the city of St. Joseph in their corporate capacity, in conformity with the Revised Statutes of Missouri for the year 1865.

"In testimony whereof, the said board of public schools have caused their corporate seal to be hereto affixed, and their president and secretary of the said board to sign their names to the same, and also the treasurer to countersign the same, this first day of April, A. D. 1868.

[Signed] "SAMUEL HAYS, President.
[Seal.] "EDWARD B. NEELEY, Secretary
"JOHN CALHOUN, Treasurer."

The petition is in the usual form, and alleges that the bonds were issued, "with others, in accordance with and by virtue of the authority vested in the defendant by its charter of incorporation, and the acts of the general assembly of the state of Missouri amendatory thereto, for the purpose of raising money to build school-houses, and 20 instalments of interest have been paid thereon." It is not pretended that there is direct authority in any of the laws under which these bonds were issued, to which reference will hereafter be made, to issue the same; but it is claimed that, from the nature of the grant of power in the charter, implied power authorizing the issue can be deduced; that on account of the object and purposes of the corporation a liberal construction, in harmony with the tendencies of legislation in Missouri regarding schools, should be indulged in; that if any doubt regarding the proper construction of the law exists, the construction given to it by those whose duty it was to carry out the law should prevail; that the acquiescence of the people of St. Joseph for more than 10 years, indicated by the payment of the interest on the bonds, and the furtherance of honesty, should incline the court to uphold the bonds.

We proceed to examine the laws under which the bonds were issued. The St. Joseph Board of Public Schools was incorporated by an act of the legislature of Missouri, approved January 4, 1860, and from this act, its amendments and laws incorporated into it, we proceed to

quote such portions as are relied on by the plaintiff, and citing other parts having a bearing on the case.

We are directed, in the first place, by plaintiff's counsel to that portion of the first section of the charter which provides that the board may "do all other acts as natural persons." The first section, from which this quotation is taken, defines the boundaries of the corporation, gives it its corporate name, confers perpetual succession, authorizes it to sue for and be sued, and proceeds, "may purchase, receive, and hold property, real and personal, may lease, sell, or dispose of the same, and do all other acts as natural persons." Very many acts must of necessity be done in connection with the execution of the powers here granted; and the natural construction of the language, "and do all other acts as natural persons," must be construed to mean the doing of the acts embraced within the powers granted, but not specified. Corporations obtain powers by grant exclusively, and from their thus limited character can claim such implied powers only as are *necessary* to carry out the obvious object and intention of the charter. Especially is this true in cases where the act of incorporation, when properly construed, provides for the very contingencies which are claimed to have existed, creating a necessity for the exercise of implied powers.

Upon another branch of the case something more will be said on this point.

The next point to which our attention is called by plaintiff's attorneys is the concluding portion of section 5, which reads as follows: "And generally to do all lawful acts which may be proper and convenient to carry into effect the objects of said corporation."

The fifth section, from which this quotation is extracted, grants the powers which the corporation is to exercise, namely: Provide for the election of its members, compel attendance at meetings, expel members, make rules for the proceedings of the board, control the schools and property of the corporation, to loan its moneys and their proceeds, and provides:

"The board shall also have power to make rules, regulations, and ordinances necessary for the management and control of the property belonging to the corporation, and for the government, discipline, and other management of the schools under their charge, so that the same shall not be inconsistent with the laws of the land, and generally to all lawful acts which may be proper and convenient to carry into effect the objects of said corporation."

Much of what has already been said regarding the construction of such language as is here employed applies to the provision cited; but

it is insisted that the words "to do all lawful acts which may be proper and convenient to carry into effect the objects of the corporation," when viewed in connection with the provision in the first section, "to do all other acts as natural persons," has peculiar significance, and may well be construed to authorize the creation of a debt for school purposes, and the issuing of bonds therefor. On the words "proper and convenient" great stress is laid in the argument. What do these words, when read in their connection, mean? The answer is, they suggest the exercise of caution in the doing of the manifold acts which a board of directors is called upon to perform in the management of its schools. The building of school-houses, under the view taken by plaintiff's counsel, is claimed to have been not only proper and convenient, but necessary to carry into effect the objects of the corporation. There must necessarily be some limitation— some boundary as to what may be proper and convenient. Has the charter left the fixing of this boundary to the discretion of the board, or defined it? We think it has clearly and indisputably defined and limited it in the fourteenth section of the act of incorporation, which is as follows:

"The board shall cause an estimate of the amount of money necessary to be raised for the purpose of building and repairing school-houses and furnishing the same, together with the amount necessary to meet the other expenses of the corporation, to be made out and certified under the seal of the board annually; and a copy of such estimate duly authenticated shall be filed with the clerk of the county court of Buchanan county on or before the first Monday in each year, and the county court shall cause the same so certified to be levied upon all taxable property, real and personal, in said district, and the amount so levied shall be collected in the manner prescribed by law for the collection of state and county taxes: provided, the taxes mentioned in this section shall not exceed one-fifth of 1 per cent. (amended by the act of 1869, and made one-half of 1 per cent.)"

It is scarcely possible to draw a clearer provision of law defining the limits within which any discretion regarding the building of school-houses and other expenditures for school purposes in St. Joseph should be exercised by the board. But it is argued that the tax limitations were such as not to produce a sufficient amount of revenue to build and pay for the number of school-houses necessary, proper, and convenient. How can this be said, in the face of the fact that the people of St. Joseph had in a measure, by and through their charter, determined this very question? If we were to approve the view taken by the board, where, it may be asked, are there limits to the implied powers of the St. Joseph school board? The board

may issue one hundred thousand or a million of dollars of bonds. We would be bound to hold the issue of the one amount as well as the other to be valid; and would further be bound to cause the taxes to be collected to pay the interest and principal, when due, for whatever amount the board saw fit to issue the bonds. There is a vast difference between building or purchasing school-houses and the appointed revenues of the district, and the making use of the credit of the city by issuing bonds and using them for that purpose; the one leading to prudence and caution in expenditure, the other tending towards extravagance, and going beyond the real wants of the city. There is scarcely any use in providing limitations to the exercise of powers in laws or charter, if they can be evaded under the guise of implied powers. I fully concur in the reasoning on this subject in the case of *Gauss* v. *Clarksville*, 19 Alb. Law J. 253.

It will not do to substitute discretion, however soundly exercised and however laudable the object, for law; and especially not in construing charters of corporations. But the charter under consideration has in its twenty-third section this provision: The legislature, after reserving the power to change, alter, and repeal the charter, goes on to provide "that no law hereafter passed shall be construed as changing, altering, or repealing the whole or any part of this act, unless this act be expressly mentioned in such law."

Laws authorizing the creation of debts and the issuing of bonds therefor for the purpose of building school-houses, passed after the charter and amendment thereof in 1866, and after the issuing of the bonds in controversy, can have no bearing on this case.

We have examined with care the amendments of the original charter in 1866, and the town and village school law of 1855, made a part of the original charter.

In the amendment of 1866 no trace of authority is found authorizing the creation of a debt for the purpose of building school-houses, much less the issuing of bonds therefor. By the ninth subdivision of the twenty-second section of the town and village school act of 1855, granting powers to school boards, the right is given them:

"To determine the number of common schools to be kept; to designate and lease or purchase sites for school-houses. (10) To build, hire, or purchase school-houses, and keep in repair and furnish the same with fuel, furniture, and necessary appendages. (11) To appropriate and apply such part of the town or village school moneys as may be necessary to the purchase or lease of sites for school-houses to the building, hiring, keeping in repair, and furnishing school-houses with fuel, furniture, and appendages."

It will be observed that here, as in the charter, not only is there no authority to create a debt to build school-houses, but, on the contrary, the creation of a debt is implicitly denied by the provision that such part of the town and village school moneys as may be necessary for the building, hiring, keeping in repair school-houses shall be applied for that purpose.

The conclusion reached against the power to issue the bonds in suit is fortified by the subsequent legislation of Missouri, which expressly gives the power to issue school bonds.

The power to create a debt, and the issuing of commercial securities therefor, are quite different things. The ordinary evidence of corporate indebtedness, such as warrants, orders, notes, are subject to legal and equitable defences. This, being known, induces prudence in their issue, and caution in receiving them. Once allow such debts to be put in the shape of commercial securities, preventing all inquiry in the hands of a *bona fide* holder except that of power to issue, and you open the doors wide, indeed invite the commission of fraud, and point the way to its successful accomplishment.

As to the argument that a construction given by those who had to execute the law, and the acquiescence in such construction by paying taxes on the bonds for a long period of time, it is sufficient to say that we are precluded from making inquiry, for the supreme court of the United States has again and again decided that such acts cannot cure the want of power, and have held the bondholder to strict inquiry regarding its existence.

The conclusions reached are that the St. Joseph Board of Public Schools had no power under its charter, nor the law of 1855, regarding towns and villages, made part of the charter, to issue the bonds, the coupons whereof are in controversy, and that the demurrer to the petition must be sustained.

Ordered accordingly.